# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2220

———————

William A. Larson,                     *

                               *

          Appellant,           *   Appeal from the United States

                               *   District Court for the

    v.                         *   Western District of Missouri.

                               *

Gary Kempker; Michael Kemna;    *

George Lombardi,              *

                               *

          Appellees.           *

———————

Submitted: January 12, 2005
Filed:  May 2, 2005

———————

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

———————

SMITH, Circuit Judge.

William A. Larson appeals from summary judgment entered in the district court[1] dismissing his claim for damages against Missouri prison officials based upon his alleged excessive exposure to cigarette smoke while imprisoned. For reversal, Larson argues that the district court erred in granting summary judgment, in denying his motion for preliminary injunction, and in granting Gary Kempker, director of the

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Missouri Department of Corrections' motion to exclude testimony. We find no reversible error and affirm.

## I. *Background*

In 1982, William A. Larson was convicted of capital murder and sentenced to life imprisonment. In 1997, Larson was transferred to the Crossroads Correctional Center (CCC) where he remains incarcerated. In August 1998, Larson filed a complaint regarding inmate smoking but never received a response. Larson filed a second complaint in November 2000. The second complaint was converted to a grievance and denied. Larson's appeal was lost, requiring him to refile his appeal. Larson's appeal was then denied. In September 2001, Larson filed a third smoking complaint, which was denied and converted to a grievance. The grievance was denied as was Larson's appeal. Larson then filed this suit in the district court under 42 U.S.C. § 1983 and the Prison Litigation Reform Act, 42 U.S.C. § 1997.

In addition to Kempker, Larson sued George Lombardi, director of the Missouri Division of Adult Institutions, and Michael Kemna, superintendent of CCC (collectively referred to as Kempker). Larson's suit alleged the defendants did not adequately protect him from exposure to second-hand smoke.[2] Larson has not been diagnosed with an allergy to environmental tobacco smoke (ETS) or with any current respiratory illness, disease or defect. Larson tested negative for coronary artery disease. Larson testified that years ago he was diagnosed as suffering from Asperger's Disorder, making him antisocial and necessitating that he be placed in a one-man cell.

---

[2]CCC has a policy of prohibiting smoking inside any building, including inmates' cells. Records show that between September 2001 and December 2003, 126 conduct violations for smoking were issued to prisoners. Since December 1999, Larson has been housed in a two-man cell with an inmate who does not smoke. Some of Larson's prior cellmates did smoke. The evidence fails to show when Larson was housed with the various cell mates who smoked. The evidence indicates that the prohibition on smoking is not strongly enforced or is often circumvented.

However, there is no medical record documentation for Asperger's Disorder or documentation connecting it with ETS. Larson believes there is such a connection. Larson sought an injunction as well as damages for infliction of cruel and unusual punishment and for denial of due process.

Following discovery, Kempker moved to exclude Larson's expert, Dr. A. Judson Wells from testifying on the basis that Dr. Wells' testimony failed to meet the requirements of Federal Rule of Evidence 702 or those of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Kempker also moved for summary judgment based on an Eleventh Amendment defense that there was no Eighth or Fourteenth Amendment abridgment of Larson's rights, and that the district court lacked jurisdiction to grant injunctive relief. Larson moved for leave to file a second amended complaint in order to sue Kempker individually. Larson subsequently filed a motion for a preliminary injunction, in part requesting the relief sought in the complaint and in part requesting that he be housed in a different location.

In a single order, the district court granted Kempker's motion for summary judgment and Kempker's motion to exclude Dr. Wells' testimony and denied Larson's motion to file a second amended complaint and Larson's preliminary injunction. From that decision Larson appeals.

## II. *Discussion*
### A. *Standard of Review*

We review a district court's decision to grant summary judgment *de novo*. *Bowen v. Mo. Dep't of Soc. Servs.*, 311 F.3d 878, 880 (8th Cir. 2002). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The district court reviews the evidence in the light most favorable to the nonmoving party. *Ludwig v.*

*Anderson*, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party must show the existence of facts on the record which create a genuine issue. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

## B. *Eleventh Amendment Immunity*

We first address whether the Eleventh Amendment bars this suit as contended by Kempker.[3] Larson's original complaint stated that he was suing two of the defendants in their official and individual capacity. However, when Larson filed a First Amended Complaint and added Lombardi as a defendant, the complaint failed to indicate that he was suing the defendants in their individual capacities. Technically, Larson's complaint had to "contain a clear statement of his wish to sue defendants in their individual capacities." *Egerdahl v. Hibbing Cmty Coll.*, 72 F.3d 615, 620 (8th Cir. 1995) (citing *Nix v. Norman*, 879 F.2d 429 (8th Cir. 1989).

Here, however, this omission is not fatal to Larson's claim. In his complaint, Larson named the defendants individually without reference to the State of Missouri. We have held that "[o]ver the years . . . important exceptions to state immunity from suit have been recognized which allow citizens to vindicate rights infringed on by the

---

[3]Kempker argues that the Eleventh Amendment prohibits the present suit because the state has not consented to be sued. Eleventh Amendment immunity bars a § 1983 lawsuit against a state agency or state official in official capacity even if the entity is the moving force behind the deprivation of the federal right. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Morstad v. Department of Corrections & Rehabilitation*, 147 F.3d 741, 744 (8th Cir. 1998) (citing *Graham* and holding that absent a waiver "the Eleventh Amendment immunizes the state and its officials acting in their official capacities from § 1983 liability"); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (providing that without a clear statement that officials are being sued in personal capacities, complaint is interpreted as including only official-capacity claims). Section 1983 does not contain a clear legislative statement abrogating a state's immunity under the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

state. If a state official is named as a defendant instead of the state or one of its agencies, the Eleventh Amendment status of the suit is less straightforward." *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989) (internal quotations omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). Although the Eleventh Amendment bars suits

> seeking to impose a liability which must be paid from public funds in the state treasury, . . . courts may order injunctions to prevent or remedy a state officer's conduct . . . . Courts may also award a wide range of prospective relief which serves to bring an end to a present violation of federal law . . . even though accompanied by a substantial ancillary effect on the state treasury.

*Id.* (internal quotations and citations omitted). We hold that the district court had the discretion to order injunctive relief.

### C. Denial of Preliminary Injunction on Eighth Amendment Claim

Larson contends the district court misapplied *Helling v. McKinney*, 509 U.S. 25 (1993) in assessing the future risk to his health created by continued exposure to ETS. In *Helling* the Supreme Court held that a prisoner could state a cause of action under the Eighth Amendment by alleging that prison officials had permitted him to be exposed to levels of tobacco smoke that presented an unreasonable risk of serious harm to future health. To obtain an injunction, *Helling* requires Larson to prove both objective and subjective elements of an Eighth Amendment claim. *Id.* at 35. "With respect to the objective factor, [Larson] must show that *he himself* is being exposed to unreasonably high levels of ETS." *Id.* (emphasis added). The *Helling* Court took into consideration that the inmate was not presently housed with a smoker. The objective factor requires "more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates

contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* at 36 (emphasis in original).

As to the subjective factor, Larson must prove that prison authorities were deliberately indifferent to his predicament. Deliberate indifference is determined "in light of the prison authorities' *current attitudes and conduct* ." *Id.* (emphasis added). The smoking policy and its enforcement will weigh heavily in this inquiry. *Id.* This presents a question of fact for the trier of fact, *Farmer v. Brennan*, 511 U.S. 825, 842 (1994), which is not properly disposed of on summary judgment. Subjectively, Larson would have to show that the prison authorities "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Id.*

The district court found that Larson failed to meet the objective test and denied his requested injunction. Our review confirms the finding of the district court that Larson failed to put forth objective evidence that he was subjected to unreasonably high levels of ETS. No scientific tests were performed to establish the levels of ETS in Larson's cell. The district court was correct in denying Larson's motion for a preliminary injunction.

D. *Exclusion of Expert Testimony*

Next, Larson argues that the district court erred by excluding the testimony of Dr. Wells under Fed. R. Evid. 702.We review a district court's decision to exclude expert testimony for abuse of discretion. *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) (citing *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 864 (8th Cir. 2004). "The district court must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury, otherwise, the factual basis of the testimony goes to the weight of the evidence." *Id.* (internal quotations omitted).

The district court excluded the testimony of Dr. Wells after determining that Dr. Wells did not have the education or training in any field that would permit him to testify about second-hand smoke. The district court stated "[h]e may have read what other experts have written on the subject, but this does not qualify him to speak with authority on the subject; at best, all he can say is what experts in the field have written on the topic." We hold the district court erred in excluding Dr. Wells' testimony.

Admission of expert testimony is guided by the principles of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). There are two requirements under Rule 702—(1) the knowledge must be scientific, technical, or other specialized knowledge; and (2) the knowledge must assist the trier of fact to understand the evidence or to determine a fact in issue.

Scientific "implies a grounding in the methods and procedures of science. Similarly, the word knowledge connotes more than subjective belief or unsupported speculation." *Id.* at 590 (internal quotations omitted). "Proposed testimony must be supported by appropriate validation—i.e., good grounds, based on what is known." *Id.* (internal quotations omitted). Assisting the trier of fact goes to relevance. *Id.* at 591. An "expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge—a rule which represents a most pervasive manifestation of the common law—insistence upon the most reliable sources of information." *Id.* at 592 (internal quotations omitted).

A key question in determining whether knowledge is scientific is whether a theory or technique can or has been tested. *Id.* at 593. Another question is "whether the theory or technique has been subjected to peer review and publication." *Id.* Rule 702 is flexible. *Id.* at 594. We agree with the district court that "an expert may extrapolate from data supplied by other experts, *see* Fed. R. Evid. 703, but a person does not become an expert simply by reviewing an expert's reports or research."

The district court did not believe that Dr. Wells' testimony would aid the jury because he "cannot describe the specific health effects of varying levels of ETS," nor can he testify "about the levels of ETS to which [Larson] is exposed." The court found that Dr. Wells' calculations and conclusions were not accurate and therefore not based "on sufficient facts or data as Rule 702 requires." Finally, the district court concluded it would have granted Kempker's motion for summary judgment even considering Dr. Wells' testimony because the testimony failed to "provide the jury with the information necessary to permit a verdict in [Larson's] favor and would not create a factual dispute sufficient to preclude summary judgment."

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chicago NW Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (internal quotations omitted) (citing *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988); Fed. R. Evid. 703)). It is "only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Loudermill*, 863 F.2d at 570.

We hold that Dr. Wells was qualified as an expert to testify regarding the deleterious health effects of ETS. Dr. Wells has over twenty-three years of ETS experience. He has a Ph.D. in physical chemistry from Harvard University and was a principal consultant to the Environmental Protection Agency (EPA). Dr. Wells authored the EPA's 1992 report on second-hand smoke and respiratory diseases, including lung cancer. Dr. Wells has served as a consultant to the Occupational Safety and Health Administration and was one of three United States experts to advise the Ontario Tobacco Research Unit of the University of Toronto in its report "Protection from Involuntary Exposure to Tobacco Smoke in Ontario: a Review of the Evidence, for the Ontario Ministry of Health." He has testified before the Subcommittee on Natural Resources, Agriculture Research and Environment and the Committee on Science and Technology, United States House of Representatives, and

before a Delaware legislative committee regarding second-hand smoke. Additionally, Dr. Wells has written scientific articles that have been cited by other experts.

Although we hold that the district court abused its discretion by not admitting Dr. Wells' expert testimony, the error is nonetheless harmless because Larson still cannot meet *Helling's* objective requirement of showing that he was exposed to unreasonably high levels of ETS and that it poses a risk that, in the Supreme Court's words, "is not one that today's society chooses to tolerate."

### III. *Conclusion*

We affirm the decision of the district court granting of summary judgment in favor of Kempker.

_____