# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3838

_____

Bryan Croft,                                      *
                                                  *
        Appellant,                     *
                                                  *
   v.                                         *  Appeal from the United States
                                                  *  District Court for the
Robert Hampton, Doctor; Pam Tanner;               *  Eastern District of Missouri.
Wanda Patton, Correctional Medical                *
Services, Bowling Green, MO;                       *  [UNPUBLISHED]
Correctional Medical Services,                    *
                                                  *
        Appellees.                      *

_____

Submitted: December 7, 2007
Filed: July 15, 2008

_____

Before BYE, RILEY, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Missouri inmate Bryan Croft appeals the district court's adverse grant of summary judgment in his 42 U.S.C. § 1983 action against Correctional Medical Services (CMS), CMS physician Robert Hampton, and CMS Nurses Wanda Patton and Pam Tanner. We affirm in part and reverse in part.

Croft's claims arose from an August 9, 2002, incident when he fractured his leg just above the ankle during a prison softball game. He alleged that the nurse

defendants, Patton and Tanner, were deliberately indifferent in their treatment of his obvious fracture at the accident scene and in the prison infirmary, and that defendant Dr. Hampton was deliberately indifferent in the care he ordered after the accident.

We conclude that the district court erred by granting summary judgment to the nurse defendants, Patton and Tanner. See Larson v. Kempker, 414 F.3d 936, 939 (8th Cir. 2005) (reviewing de novo grant of summary judgment, viewing record in light most favorable to nonmovant). The nurses acknowledged, when they arrived at the accident scene, Croft had an obvious fracture, as his foot was "not at the right angle," and he was in obvious pain. Croft offered evidence that (1) the nurses then tried to move him by jerking him from the ground while holding him by his shoulders and under the knees, causing his foot to hit the ground, (2) the nurses did not stabilize his leg while transporting him in a golf cart to the prison infirmary, and (3) he suffered additional pain when the nurses ignored Dr. Hampton's directions to splint the fracture site after Croft arrived in the infirmary. We find this evidence sufficient to create a jury question as to whether the nurses were deliberately indifferent to Croft's known serious medical need. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (interference with prescribed treatment can rise to level of deliberate indifference); Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006) (to prevail on Eighth Amendment claim, claimant must show that prison officials deliberately disregarded known serious medical need). We disagree with the district court's characterization of the nurses' failures as negligence. The record showed the nurses' acts conflicted with the emergency nursing protocol for fractures, and it is commonly known that an obviously fractured limb requires immobilization and stabilization, particularly before a person is moved, and that failure to splint or otherwise immobilize a fractured limb puts the injured person at risk for further injury and increased pain. See Burke v. N.D. Dep't of Corr. & Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (noting that medical care so inappropriate as to show refusal to provide essential care violates Eighth Amendment).

We also reverse the grant of summary judgment to Dr. Hampton. The record showed, after Croft was transferred to a hospital emergency room for evaluation, emergency room physician Paul Weiland telephoned Dr. Hampton, described his assessment of Croft's injuries and x-ray findings, and recommended an immediate transfer to another hospital with orthopedic services based on his determination that the fracture needed to be addressed within twenty-four hours due to the potential for loss of nerve or vascular function to the foot. Dr. Hampton, who had not evaluated Croft or viewed the x-rays, refused to approve the transfer, and directed that Croft be splinted and returned to the prison's transitional care unit (TCU). Croft was not taken to an orthopedist until the next Monday, and surgery was performed that evening (close to seventy-two hours after Croft was injured) for what was diagnosed as "an unstable comminuted fracture." In the meantime, Dr. Hampton telephoned orders to the TCU but he did not evaluate Croft.

A disagreement between physicians over the proper course of treatment is not actionable under section 1983, see Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995), and prison physicians are free to exercise their independent medical judgment, see Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1118-19 (8th Cir. 2007). Nonetheless, we find the record sufficient to raise trialworthy issues as to whether Dr. Hampton did, indeed, exercise independent medical judgment, or whether his decision fell so far below the reasonable standard of care as to amount to deliberate indifference. See Burke, 294 F.3d at 1044; Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) (grossly inadequate or incompetent care or doctor's choice of easier and less effective course of treatment can constitute deliberate indifference); cf. Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001) (medical treatment may so deviate from applicable standard of care as to evidence physician's deliberate indifference; finding no jurisdiction to consider district court's denial of qualified immunity based on its conclusion that parties' conflicting expert opinions regarding treatment afforded plaintiff created material question of fact concerning whether defendant doctor acted with deliberate indifference). We also find, given Dr. Weiland's testimony as to the

need for care within twenty-four hours to avoid neurovascular compromise, there were genuine issues of material fact as to whether Croft was placed at substantial risk by the delay. See Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (when inmate alleges that delay in treatment rises to level of Eighth Amendment violation, objective seriousness of deprivation should be measured by reference to effect of delay, and to establish this effect inmate must place verifying medical evidence in record); Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997) (inmate offered "sufficient 'verifying medical evidence'"--in form of expert testimony--that defendant ignored critical or escalating situation or that delay posed substantial risk of serious harm); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1994) (per curiam) (defendant may be liable for delay in treatment if he ignored acute or escalating situation, given type of injury in case).

As to CMS, however, we affirm the grant of summary judgment. A corporation acting under color of state law will be held liable only for its own unconstitutional policies, see Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993), and there was insufficient evidence offered here to create a jury question on CMS's section 1983 liability, see id. (proper test is whether policy, custom, or action by those representing official policy, causes actionable injury).

Accordingly, we affirm the grant of summary judgment to CMS, and we reverse and remand for further proceedings consistent with this opinion on the claims against Dr. Hampton and Nurses Patton and Tanner.

RILEY, Circuit Judge, dissenting.

I respectfully dissent. The majority's decision to reverse the district court's summary judgment because jury questions remain regarding (1) "whether the nurses were deliberately indifferent to Croft's known serious medical need," supra at 2; and (2) "whether [Dr. Hampton placed] Croft . . . at substantial risk by the delay," supra

at 4, misses the mark. The decision is contrary to the facts and is an incomplete analysis of the applicable law.

Croft's section 1983 claims against the nurses and Dr. Hampton are all properly evaluated as delays in treatment. In each instance the basis of the complaint is not that care was not rendered, but that care was not rendered in a timely fashion. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (citation and internal quotation marks omitted). "To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." Id. (citation and internal quotation marks omitted).[1] Croft has not offered any verifying medical evidence as to the detrimental effects of the alleged delays in treatment. Croft's claims must fail. See id.

Croft broke his right leg sliding into second base during a prison softball game on August 9, 2002. The infirmary was called immediately at 6:58 p.m. The nurses arrived on the scene within minutes. The nurses did not carry a splint with them. Croft complains the nurses did not stabilize his leg. When the nurses attempted to move Croft onto a yellow backboard, Croft's "foot completely spun over backwards and hit the dirt." The nurses slid the board under Croft, and then lifted the board and Croft onto a golf cart which then transported Croft to the infirmary, a trip that took about one and a half minutes. At the infirmary, Croft was transferred from the board to a bed.

---

[1]The majority correctly cites Laughlin and Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997), supra at 4, but does not apply their controlling precedent.

Upon arriving at the infirmary, Nurse Pamela S. Tanner immediately called Dr. Hampton, the on-call physician, who directed that an ambulance be called and Croft's leg be splinted. The nurses assessed Croft's vascular and neurological functions which were intact. The nurses called for an ambulance at 7:20 p.m. The ambulance was dispatched at 7:40 p.m. The ambulance arrived at the infirmary at 8:00 p.m. Once at the infirmary, an emergency medical technician (EMT) assessed Croft, checking Croft's vital signs at 8:22 p.m., administering morphine to Croft at 8:27 p.m. for pain relief and immobilizing the broken leg with an air cast. The ambulance departed the infirmary at 8:35 p.m. and arrived at the Pike County Memorial Hospital emergency room (ER) at 8:55 p.m.

At the ER, Croft was examined by Dr. Paul J. Weiland (Dr. Weiland), who first saw Croft at 9:05 p.m. Croft's leg was x-rayed. The x-ray revealed the bones were shattered in multiple places. Croft was diagnosed with a comminuted fracture of the right distal tibia and fibula. Croft's neurologic and vascular functions were intact. Because no orthopedic services were available at the hospital, Dr. Weiland did not recommend admitting Croft because "[w]e did not have orthopedic services available. [It w]ould have been inappropriate for us to take care of him." Dr. Weiland recommended transferring Croft to another facility for an orthopedic evaluation and possible surgery, but acknowledged, "It's not necessarily where they would have to operate . . . at two o'clock in the morning after he got there, but where he would probably have to say be operated on the next morning."

Dr. Hampton considered Dr. Weiland's recommendation, but determined Croft should be returned to the prison and admitted to the transitional care unit (TCU). Croft left the ER early Saturday morning and was admitted to the TCU at 2:15 a.m. Saturday morning. Croft stayed in the TCU until Monday when he was scheduled for an orthopedic consult with Dr. Thomas R. Turnbaugh (Dr. Turnbaugh). While in the TCU, Croft was given medication for his pain, and the vascular and neurological function in his leg was checked every four hours with directions that a doctor be

contacted immediately if Croft "is unable to wiggle toes, or loses pedal pulse." On Monday morning, Croft's toes were warm with good coloring. Croft was able to wiggle his toes, and he had a "good strong pedal p[u]lse." Croft left the TCU at 12:15 p.m. on Monday August 12, 2002, en route to his orthopedic evaluation with Dr. Turnbaugh. Croft was admitted to Capitol Regional Medical Center in Jefferson City, Missouri, where he was first evaluated by Dr. Thomas Kramer (Dr. Kramer) and then reevaluated by Dr. Turnbaugh who performed surgery later that day to repair the fractures. Two days later, on Wednesday August 14, 2002, Croft was discharged and returned to the prison infirmary.

Croft alleges the nurses violated his Eighth Amendment rights by failing to splint his leg in a timely fashion. Viewing the record in the light most favorable to Croft, the evidence clearly establishes Croft's leg was splinted within one and a half hours of the injury and within about one hour of when the nurses were directed to splint the leg by Dr. Hampton. The leg splint was not denied, but only delayed. As such, Croft is required to demonstrate the objective seriousness of the delay in splinting his leg by placing medical evidence in the record which verifies the objective seriousness of the one and a half hour delay. Croft has not done so. No medical evidence exists in the record establishing Croft suffered any vascular or neurological damage due to the broken leg, much less any vascular or neurological damage attributable to the one and a half hour delay in applying a splint. All of the evidence reflects Croft's vascular and neurological functions always remained intact. With no medical evidence demonstrating any medical ill effects from the one and a half hour delay in splinting his leg, Croft's Eighth Amendment claim against the nurses fails.

Similarly, Croft's Eighth Amendment claim against Dr. Hampton also fails, because there is no medical evidence in the record evidencing either any deliberate indifferent and harmful delay or any negative effects to Croft from a maximal delay

of sixty hours[2] in having Croft's injury evaluated by an orthopedic surgeon. This is not a case where Croft was denied access to an orthopedic surgeon, or denied necessary surgery to his leg. Croft's claim against Dr. Hampton rests solely on an allegation that proper evaluation and treatment was delayed, resulting in a violation of Croft's Eighth Amendment rights. The delay occurred over the weekend to the next business day. Dr. Weiland opined that the proper standard of care called for the evaluation and treatment of Croft's injury in "a timely fashion" or "in a reasonable period of time." Dr. Weiland did not specify what timely or reasonable meant.

Croft submitted no medical evidence showing any negative effect of the delay. Dr. Weiland counseled in favor of an immediate transfer from the ER to a facility equipped to conduct an orthopedic evaluation. Dr. Weiland's opinion discusses the potential risks of delay. The doctor's testimony does not establish or even speculate on any negative effects of the delay on Croft. Croft completely fails to demonstrate his delay of a maximum of two and a half days in having Croft's injury evaluated by an orthopedic surgeon resulted in *any* ill effects to Croft. The record reflects (1) the surgery was conducted on the same day as the orthopedic evaluation, (2) Croft's vascular and neurologic functions were always intact and (3) the surgery was deemed a success by the surgeon. Viewed in the light most favorable to Croft, the record lacks any medical evidence demonstrating the objective seriousness of any deprivation, measured in reference to the *effect* of the delay.

This record hardly supports a claim of negligence, does not sustain a claim of gross negligence and certainly does not bear the much heavier burden of an Eighth Amendment deliberate indifference claim. See Popoalii v. Corr. Med. Servs., 512

---

[2]Croft asserts the delay between injury and orthopedic evaluation was five days, but the medical records unambiguously contradict Croft's assertion. At most, the delay in obtaining an orthopedic consult was sixty hours (two and a half days), measuring from the time Croft left the ER early Saturday morning to the time he was evaluated by Dr. Kramer on Monday afternoon.

F.3d 488, 499 (8th Cir. 2008) (noting "[f]or a claim of deliberate indifference, the prisoner must show more than negligence, more even then gross negligence [because] . . . . [d]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." (citations and internal quotation marks omitted)). Prison nurses and physicians should not so readily be forced to run the litigation gauntlet, as the majority proposes here, which further increases the difficulty of prisons recruiting medical professionals.

The district court's grant of summary judgment for the defendants should be affirmed in all respects.

_____