PER CURIAM.
Missouri inmate Bryan Croft appeals the district court’s adverse grant of summary judgment in his 42 U.S.C. § 1983 action against Correctional Medical Services (CMS), CMS physician Robert Hampton, and CMS Nurses Wanda Patton and Pam Tanner. We affirm in part and reverse in part.
Croft’s claims arose from an August 9, 2002, incident when he fractured his leg just above the ankle during a prison softball game. He alleged that the nurse defendants, Patton and Tanner, were deliberately indifferent in their treatment of his obvious fracture at the accident scene and in the prison infirmary, and that defendant Dr. Hampton was deliberately indifferent in the care he ordered after the accident.
We conclude that the district court erred by granting summary judgment to the nurse defendants, Patton and Tanner. See Larson v. Kempker, 414 F.3d 936, 939 (8th Cir.2005) (reviewing de novo grant of *956 summary judgment, viewing record in light most favorable to nonmovant). The nurses acknowledged, when they arrived at the accident scene, Croft had an obvious fracture, as his foot was “not at the right angle,” and he was in obvious pain. Croft offered evidence that (1) the nurses then tried to move him by jerking him from the ground while holding him by his shoulders and under the knees, causing his foot to hit the ground, (2) the nurses did not stabilize his leg while transporting him in a golf cart to the prison infirmary, and (3) he suffered additional pain when the nurses ignored Dr. Hampton’s directions to splint the fracture site after Croft arrived in the infirmary. We find this evidence sufficient to create a jury question as to whether the nurses were deliberately indifferent to Croft’s known serious medical need. See Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (interference with prescribed treatment can rise to level of deliberate indifference); Alberson v. Norris, 458 F.3d 762, 765 (8th Cir.2006) (to prevail on Eighth Amendment claim, claimant must show that prison officials deliberately disregarded known serious medical need). We disagree with the district court’s characterization of the nurses’ failures as negligence. The record showed the nurses’ acts conflicted with the emergency nursing protocol for fractures, and it is commonly known that an obviously fractured limb requires immobilization and stabilization, particularly before a person is moved, and that failure to splint or otherwise immobilize a fractured limb puts the injured person at risk for further injury and increased pain. See Burke v. N.D. Dep’t of Corr. & Rehab., 294 F.3d 1043, 1044 (8th Cir.2002) (per curiam) (noting that medical care so inappropriate as to show refusal to provide essential care violates Eighth Amendment).
We also reverse the grant of summary judgment to Dr. Hampton. The record showed, after Croft was transferred to a hospital emergency room for evaluation, emergency room physician Paul Weiland telephoned Dr. Hampton, described his assessment of Croft’s injuries and x-ray findings, and recommended an immediate transfer to another hospital with orthopedic services based on his determination that the fracture needed to be addressed within twenty-four hours due to the potential for loss of nerve or vascular function to the foot. Dr. Hampton, who had not evaluated Croft or viewed the x-rays, refused to approve the transfer, and directed that Croft be splinted and returned to the prison’s transitional care unit (TCU). Croft was not taken to an orthopedist until the next Monday, and surgery was performed that evening (close to seventy-two hours after Croft was injured) for what was diagnosed as “an unstable comminuted fracture.” In the meantime, Dr. Hampton telephoned orders to the TCU but he did not evaluate Croft.
A disagreement between physicians over the proper course of treatment is not actionable under section 1983, see Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir.1995), and prison physicians are free to exercise their independent medical judgment, see Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1118-19 (8th Cir.2007). Nonetheless, we find the record sufficient to raise trialworthy issues as to whether Dr. Hampton did, indeed, exercise independent medical judgment, or whether his decision fell so far below the reasonable standard of care as to amount to deliberate indifference. See Burke, 294 F.3d at 1044; Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir.1990) (grossly inadequate or incompetent care or doctor’s choice of easier and less effective course of treatment can constitute deliberate indifference); cf. Moore v. Duffy, 255 F.3d 543, 545 (8th Cir.2001) (medical treatment may so deviate from
*957 applicable standard of care as to evidence physician’s deliberate indifference; finding no jurisdiction to consider district court’s denial of qualified immunity based on its conclusion that parties’ conflicting expert opinions regarding treatment afforded plaintiff created material question of fact concerning whether defendant doctor acted with deliberate indifference). We also find, given Dr. Weiland’s testimony as to the need for care within twenty-four hours to avoid neurovascular compromise, there were genuine issues of material fact as to whether Croft was placed at substantial risk by the delay. See Laughlin v. Schri-ro, 430 F.3d 927, 929 (8th Cir.2005) (when inmate alleges that delay in treatment rises to level of Eighth Amendment violation, objective seriousness of deprivation should be measured by reference to effect of delay, and to establish this effect inmate must place verifying medical evidence in record); Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir.1997) (inmate offered “sufficient ‘verifying medical evidence’ ” — in form of expert testimony — that defendant ignored critical or escalating situation or that delay posed substantial risk of serious harm); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994) (per curiam) (defendant may be liable for delay in treatment if he ignored acute or escalating situation, given type of injury in case).
As to CMS, however, we affirm the grant of summary judgment. A corporation acting under color of state law will be held liable only for its own unconstitutional policies, see Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir.1993), and there was insufficient evidence offered here to create a jury question on CMS’s section 1983 liability, see id. (proper test is whether policy, custom, or action by those representing official policy, causes actionable injury).
Accordingly, we affirm the grant of summary judgment to CMS, and we reverse and remand for further proceedings consistent with this opinion on the claims against Dr. Hampton and Nurses Patton and Tanner.