**Andrew GILBLOM, Appellant**

v.

**Warden GILLIPSIE; Officer Kozart; Officer Kraus; Greene County.**

No. 10–2492.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) May 12, 2011.

Filed: July 7, 2011.

Mary Walsh, Esq., Pittsburgh, PA, for Andrew Gilblom.

Stephanie L. Hersperger, Esq., Thomas, Thomas & Hafer, Harrisburg, PA, Suzanne B. Merrick, Esq., Thomas, Thomas & Hafer, Pittsburgh, PA, David F. Pollock, Esq., Pollock Morris, Waynesburg, PA, for Warden Gillipsie; Officer Kozart; Officer Kraus; Greene County.

Before: SMITH, CHAGARES, and VANASKIE, Circuit Judges.

OPINION OF THE COURT

VANASKIE, Circuit Judge.

Appellant Andrew Gilblom appeals a District Court order granting summary judgment in favor of two corrections officers at the Greene County Jail on Gilblom's Eighth Amendment claim. For substantially the reasons articulated by the District Court, we will affirm.

I.

As we write only for the parties, who are familiar with the facts and procedural history of the case, we will set forth only those facts necessary to our analysis. In May, 2007, Gilblom was found guilty of driving while intoxicated and sentenced to a term of imprisonment of not less than ninety days and not more than twenty-

three and one-half months. On June 4, 2007, Gilblom was "granted leave to serve his Sentence on consecutive 48 hour weekends." (A.33.) He usually reported to the Greene County Jail on Friday evenings after 6 p.m., and was discharged late Sunday. This accommodation was made, he claims, to enable him to remain employed and also to retain custody of his two minor children.

On Friday, December 7, 2007, Gilblom reported to the Greene County Jail at 7 p.m. An anonymous tipster reported that Gilblom was bringing tobacco into the jail. In such cases, inmates' excrement is searched for any evidence of contraband. Accordingly, Warden Gillipsie directed that Gilblom be detained upon his arrival until he defecated and his excrement was searched.

At this time, Appellee Officer Cozart was the sergeant on duty.[1] He encountered Gilblom in the booking room and told him that he would not leave this room until he defecated in a waste basket in the nurse's station. Gilblom attempted to defecate, but was unsuccessful.

At 8 a.m. on Saturday, December 8, Officer Kraus replaced Officer Cozart as shift supervisor. Gilblom claims that, during this time, Officer Kraus entered the room and laughed at hi m, told him that he knew he was smuggling tobacco, and that he was calling the Warden to ensure that Gilblom was not released. Gilblom tried to sleep on the floor in the booking room, later being served breakfast and moving to a bench.

At 11 a.m. on Saturday, Gilblom was transferred to a "dry cell." This is a cell with a toilet for which the water has been turned off. Gilblom was ordered to remain in the dry cell until he defecated. When he defecated, he was instructed to inform the staff so that his excrement could be searched for contraband.

Gilblom first defecated shortly after lunch on Saturday afternoon. By his own recollection, he requested Officer Kraus, who was still on duty, to inspect his excrement, but Kraus refused. Gilblom's cell was recorded by an audio/video camera, and he repeatedly attempted to notify both those monitoring him as well as any passing guards. He was repeatedly told by these individuals that they were busy or would not otherwise check his excrement.

At some point during the day on Saturday, Officer Kraus came to the cell. Gilblom told him that he had defecated, but Officer Kraus refused to search the excrement, and he did not notify anyone else to do so.[2]

Gilblom was forced to remain in the cell throughout the day Saturday. He ate his dinner there at 5 p.m. and defecated a second time after dinner. Later, Officer Cozart stopped by and Gilblom asked him to check his excrement. Officer Cozart refused to do this personally. When Gilblom suggested that Officer Cozart arrange for a doctor, a laxative, and a rectal exam, Officer Cozart laughed and told him that the next meal would be served at 6 a.m. on Sunday.

---

1. In his brief, Gilblom consistently refers to Appellees Cozart and Kraus as "Sergeant Cozart" and "Sergeant Kraus." In the Appellees' brief, they refer to themselves as "Officer Cozart" and "Officer Kraus." Accordingly, we will also refer to them as Officer, rather than Sergeant. Their identification as "Sergeant" may have arisen because both men

were serving as shift supervisors during the events at issue.

2. Officer Kraus admits that he informed the Warden at some point that Gilblom had not defecated, and received reassurance that he was to be held until he did; whether this conversation occurred before or after Saturday afternoon is unclear.

The person who brought breakfast on Sunday refused to check the excrement, holding his nose and walking away. Gilblom defecated a third and fourth time on Sunday morning and evening, respectively. No one agreed to check his excrement, and he was told that he would not be released at his usual time of 7 p.m. on Sunday.

In fact, Gilblom remained in the cell until Monday morning. He was served breakfast and another officer, Officer Lacich, stopped by to count him. Officer Lacich discovered the situation, apologized, but indicated that he could not search Gilblom's excrement, as it would make him sick. Instead, Officer Lacich offered to hold a flashlight while Gilblom searched his own excrement. Gilblom, desperate to get out of the facility, searched his excrement with his bare hands, breaking it apart to show that there was no contraband while Officer Lacich held the flashlight over the toilet. Officer Cozart indicates that he entered the cell at this point, prepared to offer gloves to Gilblom, but Gilblom was already searching through his own excrement. Afterwards, Gilblom vomited into the toilet. Immediately thereafter, Officer Lacich ensured that water was turned on in the cell and Gilblom was provided with a bar of soap. He had been in the dry cell, in close proximity to his own excrement, for approximately 36 hours. After a further search and consultation among the officers, the Warden authorized Gilblom's release.

Gilblom was released at about 9 or 10 a.m. on Monday morning, December 10, 2007. As he left the facility, he saw Officer Kraus, who laughed at him. Although receiving credit for the 15 additional hours

of incarceration, Gilblom lost his job and his battle for custody of his children became more complicated as a result of his delayed release.

On December 8, 2008, Gilblom initiated this action against Warden Gillipsie, Officer Kraus, Officer Cozart, and Greene County. The Magistrate Judge, in a well-written, comprehensive, and thorough opinion, recommended that Appellants' motion for summary judgment be granted. Gilblom timely objected to the Report and Recommendation. On May 5, 2010, the District Judge adopted the Report and Recommendation and granted summary judgment in favor of all defendants. Gilblom now appeals only insofar as summary judgment was granted in favor of Officers Cozart and Kraus on Gilblom's Eighth Amendment claim.[3]

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1343 and § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review a district court's grant of summary judgment *de novo*. Summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. In reviewing the District Court's grant of summary judgment, we view the facts in a light most favorable to the non-moving party." *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir.2007) (internal citations omitted).

There appears to be no genuine issue of material fact in this case. Both parties provide nearly identical accounts of the

---

**3.** In addition to asserting an Eighth Amendment violation, Gilblom also presented claims under the Fourteenth Amendment due process clause and Article I, section 8 of the Pennsylvania Constitution, which prohibits

unreasonable searches and seizures. Gilblom is not pursuing these latter two claims on appeal. Nor does he challenge the decision awarding summary judgment to Greene County and Warden Gillipsie.

events of the weekend in question, only differing in minor details, such as whether Gilblom first encountered Officer Cozart on Friday evening or Saturday morning, and whether Officer Cozart intended to offer Gilblom gloves when he noticed Gilblom searching through his own excrement. Accordingly, we need only resolve whether Appellees Cozart and Kraus were entitled to judgment as a matter of law on the claim that they created prison conditions which violated Gilblom's Eighth Amendment freedom from cruel and unusual punishment.

"[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (internal quotation marks omitted). "[S]econd ... a prison official must have a sufficiently culpable state of mind." *Id.* (internal quotation marks omitted).

To satisfy the objective component, a plaintiff must show that the conditions of confinement constituted extreme deprivations of "the minimal civilized measure of life's necessities." *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Factors to be considered include "the length of confinement, the amount of time prisoners must spend in their cells each day, the opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers." *Tillery v. Owens,* 907 F.2d 418, 427 (3d Cir.1990).

The conditions of confinement to which Gilblom was subjected for approximately 36 hours are indeed unsettling. Nevertheless, Gilblom's placement in a dry cell for the purpose of searching his excrement, is not, in and of itself, problematic. Furthermore, while the prison staff's repeated refusal to search Gilblom's waste is inexcusable, the conditions to which Gilblom was exposed do not rise to the level of extreme deprivation necessary for a successful Eighth Amendment claim.

In support of his argument, Gilblom cites *Young v. Quinlan,* 960 F.2d 351 (3d Cir.1992), *superseded by statute on other grounds as stated in Ghana v. Holland,* 226 F.3d 175, 184 (3d Cir.2000), and *Alvarez v. County of Cumberland,* Civil No. 07–346, 2009 WL 750200 (D.N.J. Mar. 18, 2009) (slip copy). These cases, however, are distinguishable. In *Young,* an inmate was terrorized in his cell by another inmate. His requests for transfer went unheeded and, in a desperate bid to escape, he flooded his cell by blocking the toilet. As a result, he was placed in a "dry cell" for four days without toilet paper or any means to clean himself while suffering from diarrhea. He was forced to urinate and defecate on the floor in a corner of the cell. Reviewing the "totality of the conditions of his imprisonment, namely the protection and sanitation afforded to him," coupled with the fact that Young was HIV positive and, thus, more susceptible to infection, the court found that the objective component of an Eighth Amendment violation had been satisfied. *Young,* 960 F.2d at 360 n. 20.

In *Alvarez,* a prisoner was placed in a cell which was in a state of disrepair for a period of about five days. The toilet and the sink did not work. Consequently, the prisoner was forced to urinate and defecate in a non-functioning toilet after removing garbage from the toilet. He was not permitted to wash, and as a result developed numerous boils and methicillin-resistant staphylococcus aureus ("MRSA"). The District Court found that, consistent with *Young,* the objective element of the Eighth Amendment claim had been satisfied. *Alvarez,* 2009 WL 750200 at * 5.

"[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Here, the need to ensure that contraband would not be brought into the prison certainly justified Gilblom's placement in a dry cell. Moreover, unlike the plaintiff in *Young,* Gilblom was not deprived of access to a toilet and forced to defecate on the floor. His time spent in proximity to his excrement was 36 hours, not four days as part of a five-month period of terror endured by the plaintiff in *Young.* Gilblom did not suffer any adverse health effects, unlike the plaintiff in *Alvarez.* As the District Court aptly pointed out, Gilblom was not forced to manually search his own excrement.

He did not attempt to solicit further assistance nor did he request any tools or protective gear before deciding to undertake the inspection. Considering the totality of the circumstances, Gilblom has failed to meet the objective component here.

Because the objective prong of the Eighth Amendment inquiry cannot be satisfied on the undisputed facts presented here, there is no need to address the subjective prong. *See Larson v. Kempker,* 414 F.3d 936, 940 (8th Cir.2005). Accordingly, we will affirm the judgment of the District Court.